FILED
2026 Nov-16 AM 08:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

ROBIN BLACK, **CASE NO.:** 1:25-cv-01365-CLM

Plaintiff,

v.

USHEALTH ADVISORS, LLC, and
USHEALTH GROUP, INC.,

Defendant.
_______________________________________/

# DEFENDANT USHEALTH ADVISORS, LLC'S OPPOSED MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant USHEALTH Advisors, LLC ("USHA") hereby files this motion pursuant to Fed. R. Civ. P. 12(c) for entry of an order granting judgment on the pleadings on Counts I and II in USHA's favor. Plaintiff opposes the Motion as to Count I, and rather than state her position as to Count II, counsel stated Plaintiff "will dismiss Count II as to the Alabama claims as to both phone calls and texts."

**PRELIMINARY STATEMENT**

Plaintiff is a serial litigant, with this being one of dozens of lawsuits that she has filed under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Count I alleges USHA violated the TCPA's national do-not-call rules and regulations, and Count II alleges USHA violated the Alabama Telemarketing Act ("ATA"). There are numerous deficiencies fatal to both of Plaintiff's claims, some of which can be determined as a matter of law. Indeed, this Court has already decided one of those issues, namely that text messages are not within the scope of Plaintiff's TCPA claim. *See Conrad v. Hart Consumer Prods.*, No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026). For the reasons detailed below, even if all well-pleaded, plausibly alleged facts are assumed to be true, USHA is entitled to judgment on the pleadings in its favor on both claims.

**ARGUMENT**

**I. APPLICABLE LEGAL STANDARDS**

"After the pleadings are closed—but early enough not to delay trial—a party

may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (cleaned up). "In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and . . . view[s] those facts in the light most favorable to the non-moving party." *Id.*

"The court analyzes Rule 12(c) motions for judgment on the pleadings like Rule 12(b)(6) motions to dismiss. . . . So to survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Auto-Owners Ins. Co. v. United Way of E. Cent. Alabama*, 497 F. Supp. 3d 1115, 1118 (N.D. Ala. 2020) (Maze, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding a motion for judgment on the pleadings, the court is limited to "the substance of the pleadings and any judicially noticed facts." *Miller v. Pfizer Inc.*, No. 4:13-CV-01687-KOB, 2014 WL 2155020, *2 (N.D. Ala. May 22, 2014).

## II. PLAINTIFF'S TCPA CLAIM FAILS AS A MATTER OF LAW

### A. Text Messages are Not "Telephone Calls"

The first issue on this Motion is one the Court has already decided as a matter of law. A majority of the communications alleged to have been sent in

violation of TCPA's do-not-call rules were text messages (often sent in response to Plaintiff's inquiries to schedule a telephone call). *See* Compl. at ¶ 13b. But, as this Court recently ruled in *Conrad*, Plaintiff cannot state a claim for relief under § 227(c)(5) to the extent the claim is based upon the receipt of text messages.

47 U.S.C. § 227(c)(5) creates a private right of action only if the plaintiff "received more than one ***telephone call*** within any 12-month period . . . ." (emphasis added). That statutory language must be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). As this Court observed, Congress's use of the term "telephone call" in 1991, when it enacted the TCPA, could not have intended text messages because text messages did not even exist at that time. *Conrad*, 2026 WL 2741623 at *4. For all the reasons advanced by this Court in its thorough and well-reasoned decision in *Conrad*, "both the timing of the TCPA and 'ordinary principles of statutory interpretation' indicate that a reasonable reader of the TCPA would not have understood the phrase 'received more than one telephone call' to include the receipt of multiple computer-generated text messages on a cellular phone," and the FCC's contrary interpretation is entitled to no weight and cannot overcome "§ 227(c)(5)'s plain meaning using common sense and canons of interpretation." *Id.* at *11 & 13.

The Seventh Circuit similarly ruled that § 227(c)(5) does not apply to text

messages, as have the majority of district courts to have considered the question. *See*, *e.g.*, *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026); *Bronstin v. Happy Cabbage Analytics, Inc.*, No. 1:25-CV-01083, 2026 WL 3257600, *4-7 (M.D. Pa. Oct. 29, 2026); *Brown v. Hursh Grp., LLC*, No. 26-CV-00185-NRN, 2026 WL 2906613, *2-3 (D. Colo. Sept. 28, 2026); *Anthony*, 2026 WL 2685650 at *12 n.16; *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068 (M.D.N.C. Sept. 3, 2026). For the reasons set forth in *Conrad*, *Steidinger*, and the other cited cases, Plaintiff cannot plausibly allege a TCPA claim as to text messages, and partial judgment on that claim, to the extent based on alleged text messages, should be entered in USHA's favor.

### B. Calls to Cellular Telephones are Not Telephone Calls to "Residential Telephone Subscribers"

Plaintiff's TCPA claim fails as a matter of law on another legal ground. The provisions of Section 227(c) are limited to "residential telephone subscribers" or "residential subscribers," (47 U.S.C. §§ 227(c)(1) & (c)(3)), which does not include cellular telephone numbers. Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The corresponding federal regulation, in turn, provides "[n]o person or entity shall initiate any telephone solicitation to . . . (2) [a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons . . . ." 47 C.F.R. § 64.1200(c). Therefore, Plaintiff must plausibly allege that she is a "residential telephone subscriber." Plaintiff, though, fails to do so here, as she squarely alleges the telephone calls and text messages at issue were placed to her cellular telephone number. *See* Compl. at ¶¶ 5, 9, 13.

The plain meaning of the statutory term "residential telephone subscriber" does not include cellular telephones, requiring judgment in USHA's favor on Count I. "In interpreting a statute, we start with the plain language of the provisions to be interpreted." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008). The TCPA does not define the terms "residential telephone subscriber" or "residential subscriber." In that event, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). *See also Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning."). "When examining the plain and ordinary meaning of a statute, 'one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment.'" *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016)).

The court in *Anthony v. Brian Marketing Group* recently analyzed the same

question presented here, and explained that dictionary definitions of "residential" and "subscriber" or similar words at the time of the enactment of the TCPA

> suggest that 'residential telephone subscriber,' at the very least, meant a person who pays intermittently to receive telephone services that are corrected to his or her home. It is also plausible that "subscriber" takes on the verbatim definition set forth in Webster's Third New International Dictionary (1986): "an individual having commercial telephone equipment installed on his premises," and the word "residence" serves only to clarify that "his premises," within the definition of subscriber, is a home. But at the very least, several of the definitions of "subscriber" at the time the TCPA was enacted include language indicating a physical tethering of the service to the residential location.

No. 24-80800-CIV, 2026 WL 2685650, *7 (S.D. Fla. Sept. 11, 2026). *See also id.* (collecting numerous contemporaneous definitions).

Moreover, as the *Anthony* court explained, "[c]ommon usage at the time of enactment mirrors these dictionary definitions, supporting the ordinary understanding of 'residential telephone subscriber' as distinct from 'wireless telephone subscriber' and referring to persons who possess home phones, or landlines." *Id.* (citing *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1234 n.1 (9th Cir. 2022) (Ikuta, J., dissenting) (collecting contemporaneous sources). Indeed, in 1991, "cellphones, as we know them today . . . were in their fledgling stages (better known as wireless/cordless phones at the time)" and "the first text message was not sent until the end of 1992, after Congress enacted the TCPA." *Id.* (citing James F. DeRose, The Wireless Data Handbook 132 (4th ed. 1999); Victoria Shannon, *15*

*years of text messages, a 'cultural phenomenon,'* N.Y. Times (Dec. 5, 2007), available at https://perma.cc/S9LR-4BPH). These indicia of ordinary, contemporary, common meaning all indicate that when Congress enacted the TCPA, the term "residential telephone subscriber" did not include within its scope cellular phones, and the two are separate and distinct concepts.

This conclusion is also supported by the structure of the TCPA and the text of other provisions in the statute. When drafting and later amending the TCPA, Congress used language specific to technology via phrases such as "cellular telephone service," "text messaging service," and "text message." *See* 47 U.S.C. § 227(b)(iii) (making it unlawful to call "any telephone number assigned to a . . . cellular telephone service" using an ATDS or prerecorded voice); 47 U.S.C. §§ 227(b)(1)(C) & (b)(2)(H) (authorizing the FCC to exempt "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party" and to limit calls "to a telephone number assigned to a cellular telephone service" by a debt collector acting on behalf of the government); 47 U.S.C. § 227(e) (making it unlawful to transmit misleading caller ID information to a "recipient . . . in connection with any . . . text messaging service"); 47 U.S.C. § 227(e)(8)(C) (defining "text message").

In fact, "cellular telephone service" is used three times and the phrases "text message" and/or "text messaging service" are used sixteen times in the TCPA.

But, significantly, not a single one of those nineteen instances appears in § 227(c), the statutory provision under which Plaintiff's claims are being brought, and which instead exclusively concerns residential telephone lines/subscriptions. In fact, Congress "explicitly uses the terms 'cellular' and 'residential' distinctly and differently throughout the statute." *Anthony*, 2026 WL 2685650 at *9. For example, § 227(b)(1)(A)(iii) prohibits certain prerecorded calls to telephone number assigned to a "cellular telephone service," while § 227(b)(1)(B) prohibits the same prerecorded calls to "any residential telephone line," further confirming the two terms refer to different things.

"This distinction between cellular and residential in sections § 227(b) and § 227(c) shows that Congress treated cellphones uniquely and used appropriate labels in accordance with that distinction." *Anthony*, 2026 WL 2685650 at *9. "Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). "Notably, Congress referenced 'cellular telephone' in other provisions of the statute," "evidencing that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected

only 'residential telephone subscribers' under § 227(c)" and the relevant regulations. *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, *3 (W.D.N.C. Feb. 8, 2023) (citing 47 U.S.C. §§ 227(b)(1)(A)(3), 227(b)(2)(C), 227(b)(2)(H)) (internal quotation omitted).

Under settled principles of statutory interpretation, "[w]here Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). Furthermore, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Consistent with these principles, the Eleventh Circuit found the TCPA draws a distinction between calls to residential phone lines and those placed to cellular telephone numbers in deciding the meaning of the term "called party" in the statute. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014). The Eleventh Circuit rejected reliance upon a prior decision because it "concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any telephone call to any residential telephone line,'" which was distinguishable because "the telephone number in question here, ***is a cell-phone number***," confirming a "residential telephone line" is not understood to include a cellular telephone

number. *Id*. (emphasis added).[1]

It is likely that Plaintiff will seek to rely on the fact that, twelve years after enactment of the TCPA, the FCC redefined "residential telephone subscriber" as used in § 227(c) to presumptively include "wireless subscribers," *i.e.*, cellular telephone users. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("2003 Order"). The Supreme Court has clarified that "[d]istrict courts are not bound by [an] agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation," and "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The FCC's determination is entitled to no weight. Nothing in the TCPA nor the 2003 Order contains any indication that Congress authorized the FCC to implement regulations under 47 U.S.C. § 227(c) to apply to or include cellular or wireless telephone numbers.

To the contrary, Congress specifically prohibited the FCC from expanding Section 227(c) by the very language contained within 47 U.S.C. § 227(c)(1), where

---

[1] *See also*, *e.g.*, *Cunningham v. Caribbean Cruise Lines, Inc.*, No. 15-62580-CIV-MORENO, 2016 WL 7494871, *2 (S.D. Fla. Dec. 29, 2016) ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers.").

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy rights . . . ." 47 U.S.C. § 227(c)(1) (emphasis added). In authorizing the FCC to establish and operate a "single national database to compile a list of telephone numbers *of residential subscribers* who object to receiving telephone solicitations," (47 U.S.C. § 227(c)(3) (emphasis added)), Congress once again intentionally excluded cellular and wireless numbers. *Accord Turizo*, 603 F. Supp. 3d at 1340 ("Thus, when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers.").

Thus, Congress never authorized the FCC to issue regulations under 47 U.S.C. § 227(c) that relate to or cover cellular or wireless telephone subscribers and, consistent with rulings from numerous courts, this Court should find that Congress limited § 227(c) by its plain text is limited to only residential telephone subscribers, and the FCC had no authority to expand and re-write § 227(c) to apply to cellular telephone numbers.[2] Therefore, judgment should be entered in favor of

[2] Indeed, because the FCC's determination was contrary to express text of the statute, several courts, in addition to the *Turizo* court, disagreed with or even rejected the FCC's determination as unauthorized before *Loper Bright* and *McLaughlin*. *See Gaker*, 2023 WL 2472649 at *3 (explaining "[t]he FCC's interpretation at issue does not preclude this Court from applying the clear text of the TCPA," and recommending granting motion to dismiss because "[t]he structure and language of the TCPA controvert" the 2003 Order's "coverage of cell phones"); *Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2519702, *4 (E.D. Tex. Apr. 26, 2019) (collecting cases), report and recommendation adopted, 2019 WL 2526536 (E.D. Tex. June 19, 2019).

USHA on Plaintiff's TCPA claim as the alleged telephone calls and text messages were not made to a residential telephone and Plaintiff was not a residential telephone subscriber.

## III. PLAINTIFF'S ATA CLAIM FAILS AS A MATTER OF LAW

USHA is also entitled to judgment in its favor on Count II, which Plaintiff asserts under the ATA, because the alleged telephone calls and text messages cannot be considered "telephone solicitations" under the ATA for at least two reasons. First, that term is defined to exclude communications by or on behalf of a licensed insurance broker or company. Not only does Plaintiff allege she was contacted by USHA's *licensed* insurance advisors, it is indisputable that USHA was at all relevant times *licensed* by the State of Alabama as an insurance producer. There are therefore no "telephone solicitations" under the ATA. Second, as with the TCPA claim, text messages are not "telephone solicitations" because that term applies only to voice communications.

### A. Ala. Code § 8-19C-2(a) Does Not Apply to the Alleged Conduct

By Plaintiff's own allegations, the communications at issue cannot furnish the basis for her ATA claim because they are not "telephone solicitations." Count II asserts a violation of Ala. Code § 8-19C-2(a), which prohibits "mak[ing] or caus[ing] to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the commission of his or

her objection to receiving telephone solicitations." *See also* Compl. at ¶ 30.

But none of the communications allegedly from or on behalf of USHA can be considered a "telephone solicitation" for purposes of the ATA because a "telephone solicitation" ***cannot*** include a call made by or on behalf of a licensed insurance broker, agent, or company. The ATA defines the term "telephone solicitation" to mean "[a] voice communication over a telephone line for the purpose of encouraging the purchase or rental of, or investment in property, goods, or services, ***but does not include communications by or on behalf of any of the exempt persons in Section 8-19A-4***." Ala. Code § 8-19A-3(17) (emphasis added).[3] Among the persons exempted by Section 8-19A-4 is "[a]ny licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license," a concept that expressly includes "any insurance broker, agent, customer representative, or solicitor licensed by an official or agency of this state or of any state of the United States licensed in accordance with the Alabama Insurance Code (Title 27)." Ala. Code § 8-19A-4(9).

USHA is indisputably a licensed insurance brokerage. According to public records, of which this Court can take judicial notice, (*see* Fed. R. Evid. 201(b)(2)), USHA has been licensed by the State of Alabama as an "insurance producer" since

[3] This definitional statute makes clear that its definitions apply "in this chapter [Chapter 19A] ***and Chapter 19C*** . . . ." Ala. Code § 8-19A-3 (emphasis added).

May 2009. *See* Ex. A.[4] An "insurance producer" is "[a] person required to be licensed under the laws of this state to sell, solicit, or negotiate insurance," (Ala. Code § 27-7-1(5)), and includes insurance brokers and brokerages.[5] Plaintiff's Complaint expressly alleges the telephone calls and text messages at issue were placed by USHA's "licensed" health insurance advisors, one of whom allegedly "provided his insurance license number," for "[t]he purpose" of "advertis[ing] and solicit[ing] enrollment in Defendant's health insurance products." Compl. at ¶¶ 13(a)(5), 13(a)(7), 14. Accordingly, pursuant to Ala. Code Sections 8-19A-3(17) and 8-19A-4, the alleged communications cannot be considered "telephone solicitations" under the ATA, and as that is a necessary element of her claim, the Court must enter judgment in USHA's favor as to the entirety of Count II.

**B. Text Message Are Not "Telephone Solicitations" Under the ATA**

Plaintiff's ATA claim is also legally insufficient to the extent it is based upon text messages, as those cannot be "telephone solicitations" for purposes of the ATA. The term "telephone solicitation," as stated above, is defined as "[a]

---

[4] *See Best v. Second Nature Brands, Inc.*, No. 24-CV-1799 (JMC), 2026 WL 887055, *13 (D.D.C. Mar. 31, 2026) (taking judicial notice of same record of defendant's license to sell insurance); *Cf. Woods v. Santander Consumer USA, Inc.*, No. 2:14-CV-02104-MHH, 2016 WL 3124618, *3 n.7 (N.D. Ala. June 3, 2016) (taking judicial notice that defendant was licensed through Alabama State Banking Department as reflected in agency's website record).

[5] *See Protopas v. Standard Fire Ins. Co.*, No. 2:21-CV-33-RDP, 2021 WL 1688734, *8 n.14 (N.D. Ala. Apr. 29, 2021) ("Because Alabama requires insurance brokers to be licensed to negotiate insurance under Alabama Code § 27-7-1(8), an insurer broker falls under the definition of a producer."); *Pa. Nat. Mut. Cas. Ins. Co. v. J.F. Morgan Gen. Contractors, Inc.*, 79 F. Supp. 3d 1245, 1251 n.3 (N.D. Ala. 2015) ("'Producer' is the statutory term for insurance brokers.") (citing Ala. Code § 27-7-1).

***voice communication*** over a telephone line for the purpose of encouraging the purchase or rental of, or investment in property, goods, or services," subject to various exceptions. Ala. Code § 8-19A-3(17) (emphasis added).

The statutory language clearly requires a "telephone solicitation" to involve a "voice communication." But, of course, "a text message . . . does not use a telephone to reproduce sounds at a distance," and thus it does not involve any voice communication. *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1371 (M.D. Fla. 2026). *See also Conrad*, 2026 WL 2741623 at *9-10 (similar). Text messages therefore cannot qualify as a "telephone solicitation" for purposes of an ATA claim as a matter of law. Another court in this District reached the exact same conclusion, finding the ATA's statutory language was clear. *See Underwood v. IFA Holdings, LLC*, No. 1:21-CV-00830-ACA, 2022 WL 2307738, *6 (N.D. Ala. June 27, 2022) (dismissing ATA claim based upon text messages).

Accordingly, Plaintiff fails to state a plausible entitlement to relief on her ATA claim as to text messages, and judgment on that claim, to the extent based on alleged text messages, should be entered in USHA's favor.

## CONCLUSION

WHEREFORE, Defendant USHEALTH Advisors, LLC, respectfully requests this Court enter judgment on the pleadings in Defendant's favor as requested herein, and for any other relief this Court deems just and proper.

Dated: November 16, 2026

Respectfully submitted,

GREENSPOON MARDER LLP

/s/ *Roy Taub*
Jeffrey A. Backman (Fla. Bar No. 662501)
(*pro hac vice*)
Roy Taub (Fla. Bar No. 116263)
(*pro hac vice*)
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
jeffrey.backman@gmlaw.com
rene.vazquez@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS TULEY &
SAVARESE, P.C.
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

*Attorneys for Defendant*
*USHEALTH Advisors, LLC*

## CERTIFICATION OF CONFERRAL

Undersigned counsel for USHA certifies that on November 11, 2026, he conferred by telephone with Plaintiff's counsel regarding the requested relief. After conferral, Plaintiff's counsel advised that Plaintiff opposes the Motion as to

Count I, and rather than state Plaintiff's position on the Motion as to Count II, stated Plaintiff "will dismiss Count II as to the Alabama claims as to both phone calls and texts."

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 16, 2026, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

*/s/ Roy Taub*
ROY TAUB